UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

ESTRELLA YEBRA,

           Plaintiff,

v.

AMFIT, INC,

           Defendant.

CASE NO. C14-5233 BHS

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

This matter comes before the Court on Defendant Amfit, Inc.'s ("Amfit") motion for summary judgment (Dkt. 18). The Court has considered the pleadings filed in support of and in opposition to the motion and the remainder of the file and hereby grants in part and denies in part the motion for the reasons stated herein.

**I. PROCEDURAL HISTORY**

On March 18, 2014, Plaintiff Estrella Yebra ("Yebra") filed a complaint against Amfit asserting causes of action for national origin discrimination, sex discrimination, color discrimination, and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, and the Washington Law Against Discrimination, RCW Chapter 49.60 and a claim for negligence. Dkt. 1.

ORDER - 1

1  On June 6, 2015, Amfit filed a motion for summary judgment. Dkt. 18. On July
2  6, 2015, Yebra responded. Dkt. 24. On July 10, 2015, Amfit replied. Dkt. 26.

## II. FACTUAL BACKGROUND

4  This case arises out of the employment and termination of Yebra from Amfit.
5  Although not supported by admissible evidence in the record, Yebra alleges that she is a
6  female, was born in Cuba, and has dark skin complexion. Dkt. 1 at 1. In July 2009,
7  Amfit hired Yebra to work in the milling unit of its orthotic insole manufacturing
8  business. Dkt. 20, Declaration of Robert Catchings, ¶ 4. Robert Catchings, the
9  supervisor of Amfit's fabrication department, made the decision to hire Yebra and admits
10 that he was aware of Yebra's sex, national origin, and skin color when he hired her. *Id.*

11  It is undisputed that Yebra received numerous warnings regarding her poor work
12 performance. In fact, Mr. Catchings declares he moved Yebra from the milling unit to
13 the covering department "to preserve her employment." *Id.* ¶ 16. In support of Amfit's
14 position, it has submitted two disciplinary warnings, four written warnings, and Yebra's
15 termination letter. *Id.*, Exhs. 3–5. Although Yebra concedes that she made mistakes, she
16 declares that other co-workers, such as Tracey and Josiah, also made similar mistakes.
17 Dkt. 25, Declaration of Estrella Yebra ("Yebra Dec."), ¶¶ 8–12. Yebra bases her claims
18 for discrimination on the allegations that she was unfairly punished for mistakes that
19 everyone made, but for which only she received reprimands. *Id.* ¶ 20. Yebra also
20 contends that she was subjected to adverse employment actions such as lower raises and
21 having to do manual labor. *Id.* ¶ 26. With regard to retaliation, Yebra claims that she
22

was retaliated against for reporting co-worker Dan's harassment of her and other employees. *Id*. ¶¶ 23–24.

In February 2013, Amfit experienced a downturn in business and was forced to lay off three employees. Catchings Dec., ¶ 20. Mr. Catchings chose to terminate Yebra because of her below average work quality. *Id*., Exh. 5.

### III. DISCUSSION

Amfit moves for summary judgment on all of Yebra's claims. Dkt. 18.

**A.     Summary Judgment Standard**

Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt"). *See also* Fed. R. Civ. P. 56(e). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477

U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The Court must consider the substantive evidentiary burden that the nonmoving party must meet at trial – e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254; *T.W. Elec. Serv., Inc.*, 809 F.2d at 630.  The Court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party.  The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim.  *T.W. Elec. Serv., Inc.*, 809 F.2d at 630 (relying on *Anderson*, 477 U.S. at 255).  Conclusory, nonspecific statements in affidavits are not sufficient, and missing facts will not be presumed.  *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888-89 (1990).

**B.     Discrimination**

Under Title VII, an employer may not discriminate against a person with respect to her "terms, conditions, or privileges of employment" because of her "race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a).  To establish a prima facie case of discrimination under Title VII, a plaintiff must provide evidence that gives rise to an inference of unlawful discrimination.  *Texas Dept. Of Comm. Affairs v. Burdine*, 450 U.S. 248, 253 (1981).  A Title VII plaintiff alleging discriminatory treatment may prove her case through circumstantial evidence, following the burden shifting framework in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  Washington courts have

1  largely adopted the burden shifting scheme announced in *McDonnell Douglas* to claims

2  of employment discrimination cases brought under the WLAD. *See Grimwood v.*

3  *University of Puget Sound*, 110 Wn.2d 355, 362 (1988) (applying the *McDonnell*

4  *Douglas* test to claim of employment discrimination brought under WLAD); *Coghlan v.*

5  *American Seafoods Co. LLC*, 413 F.3d 1090, 1094 (9th Cir. 2005) (noting Washington's

6  employment discrimination law largely parallels federal law under Title VII, and so

7  treatment of a plaintiff's Title VII claim thus applies also to his similar claim under the

8  WLAD); *Hernandez v. Space Labs Medical Inc.*, 343 F.3d 1107 (9th Cir. 2003) (applying

9  *McDonnell Douglas* burden shifting test to sex discrimination claim brought under Title

10  VII and the WLAD).

11        Under the *McDonnell Douglas* framework, plaintiff must offer evidence

12  supporting a prima face case of unlawful discrimination. *McDonnell Douglas*, 411 U.S.

13  at 802.  If she succeeds, the burden shifts to defendant to produce evidence of a lawful

14  motive for terminating her.  *Id*.  If defendant succeeds, plaintiff is obligated to produce

15  evidence that defendant's stated lawful motive is pretext.  *Id*. at 804.  If there is sufficient

16  evidence of pretext to establish questions of material fact, the case must go to the jury.

17        In this case, Yebra alleges discrimination based on her sex, skin color, and

18  national origin.  Under *McDonnell Douglas*, unlawful discrimination is presumed if the

19  plaintiff can show that "(1) she belongs to a protected class, (2) she was performing

20  according to her employer's legitimate expectations, (3) she suffered an adverse

21  employment action, and (4) other employees with qualifications similar to her own were

22

1  treated more favorably." *Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1220 (9th Cir.
2  1998) (citing *McDonnell Douglas*, 411 U.S. at 802).

3        With regard to her burden to submit evidence establishing a prima facie case, she
4  barely, if at all, meets her burden.  Yebra's only evidence is her declaration in which she
5  asserts that she suffered disparate treatment by Mr. Garcia.  First, Yebra claims that Mr.
6  Garcia reprimanded her "for mistakes that could have been made by Tracey, Josiah, or
7  any other employee who assisted in Milling and Covering."  Yebra Dec., ¶ 26(a).  This is
8  not evidence of an adverse employment action because the mistake also "could have been
9  made" by Yebra as "another employee" who assisted in the particular department.  This
10 is no more than a general allegation lacking specific details, and Yebra fails to meet her
11 burden of submitting "specific, significant probative evidence" to support her claim of
12 disparate treatment.  *Matsushita*, 475 U.S. at 586.

13       Second, Yebra claims that Mr. Garcia reprimanded her "for mistakes [she] did
14 make, but refusing to reprimand Tracey or Josiah for mistakes they made that [she]
15 observed and reported to him."  Yebra Dec., ¶ 26(b).  While Yebra does provide two
16 specific types of mistakes that Tracy made (*Id*. ¶ 9), there is no evidence that Yebra was
17 reprimanded or that she suffered any adverse employment actions for these two specific
18 types of mistakes.  Again, this is nothing but general allegations without specific
19 evidence.

20       Third, Yebra claims that Mr. Garcia gave her "a smaller raise than Tracey or
21 Josiah received."  *Id*. ¶ 26(c). The two problems with this allegation is that she fails to
22 show that she was performing according to her employer's legitimate expectations or that

either Tracey or Josiah were similarly situated employees in terms of being able to obtain the same raise.

Fourth, Yebra claims that Mr. Garcia would allow "Tracey to perform the non-manual labor tasks in Milling while [Yebra] performed all the manual labor tasks." *Id*. ¶ 26(d). Taking this fact in the light most favorable to Yebra, the Court agrees with Yebra that this would establish a prima facie case of discrimination because Yebra was treated differently than a similarly situated female employee.

Fifth, Yebra claims that Mr. Garci allowed "Tracey and Josiah to frequently leave our work area with no explanation and no warning, which required [Yebra] to perform additional work." *Id*. ¶ 26(e). Yebra fails to show that this is an adverse employment action. Moreover, Yebra fails to show that she was entitled to an explanation or warning for other employees' actions. For example, Yebra does not allege that other employees were allowed a short break every hour whereas Yebra was not allowed such a break. Therefore, with the exception of the manual labor tasks, the Court concludes that Yebra has failed to set forth a prima facie case of discrimination.

With regard to Amfit's burden, it has submitted sufficient evidence of legitimate, nondiscriminatory reasons for its actions. For example, Mr. Catchings declares that Tracey was not required to perform manual labor because of a perceived disability that Amfit accommodated (Dkt. 33) and Josiah required frequent breaks due to his advanced age (Catchings Dec., ¶ 31). Moreover, Amfit has submitted significant evidence that the reasons for the reprimands and the termination were due to Yebra's substandard performance of her duties. Dkt. 20, Exhs. 3–6 (Yebra's disciplinary notices and

1  notification of termination because of below average work quality).  Therefore, the Court

2  finds that Amfit has met its burden on this issue.

3  With regard to pretext, Yebra has submitted evidence to establish material

4  questions of fact whether Amfit's declared reasons are pretextual.  Yebra argues that

5  pretext may be "established when (1) an employee outside the protected class, (2)

6  committed acts of comparable seriousness, but (3) was not disciplined." *Johnson v.*

7  *Dep't of Soc. & Health Servs.*, 80 Wn. App. 212, 227 (1996).  "Even if the defendant

8  articulates a legitimate, nondiscriminatory reason for the challenged employment

9  decision . . . summary judgment is normally inappropriate." *Id*.  (quoting *Sischo-*

10  *Nownejad v. Merced Community College Dist.*, 934 F.2d 1104, 1111 (9th Cir. 1991),

11  *abrogated on other grounds by statute as stated in Dominguez–Curry v. Nev. Transp.*

12  *Dept.*, 424 F.3d 1027 (9th Cir. 2005)).  "While some distinctions could be drawn between

13  the behavior of the comparator and [plaintiff], they are insufficient to defeat a reasonable

14  inference that [plaintiff] was disciplined in part due to race." *Johnson*, 80 Wn. App. at

15  230.

16  In this case, Yebra has submitted a minimal amount of evidence to raise questions

17  of fact regarding pretext.  Yebra declares that both Tracey and Josiah made the same

18  mistakes Yebra made, but that they were not similarly punished or reprimanded.  Yebra

19  Dec. ¶¶ 12, 20.  Where the evidence creates "reasonable but competing inferences of both

20  discrimination and nondiscrimination," a factual question for the jury exists.  *Id*. (citing

21  *Carle v. McChord Credit Union*, 65 Wn. App. 93, 102 (1992)).  In the context of

22  competing inferences, the Court is unable to conclude that no reasonable juror could find

for Yebra. The Court recognizes that Yebra's evidence is somewhat conclusory lay opinion testimony based upon her personal observation and little if nothing else. However, the Ninth Circuit has repeatedly cautioned that summary judgment is normally inappropriate in employment discrimination cases. *See, e.g., Merced*, 934 F.2d at 1111. Therefore, the Court concludes that material questions of fact exist on Yebra's disparate treatment claims and denies Amfit's motion on these claims.

**C.   Negligence**

In Washington, a negligence claim that is based on the same facts as discrimination claims should be dismissed as a matter of law because they are duplicative. *See Ellorin v. Applied Finishing, Inc.*, 996 F. Supp. 2d 1070, 1093–94 (W.D. Wash. 2014). Yebra admits that her negligence claim is based on the same alleged facts as her discrimination claims, but argues that the negligence claim should survive because there are material questions of fact on each discrimination claim. Dkt. 24 at 13. This argument is without merit because, regardless of the merits of Yebra's discrimination claims, the negligence claim is duplicative. Therefore, the Court grants Amfit's motion on Yebra's negligence claim.

**D.   Retaliation**

In this case, Yebra argues that Amfit retaliated against her when it suspended her for reporting Dan's harassment. Dkt. 24 at 12–13. In Washington, Yebra must prove that (1) she engaged in statutorily protected opposition activity, (2) an adverse employment action was taken, and (3) a causal link between the former and the latter. *Delahunty v. Cahoon*, 66 Wn. App. 829, 839 (1992). Under federal law, Yebra must

1  show that she would not have been suspended but for reporting the alleged harassment.
2  *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2523 (2013). Yebra fails to
3  meet either burden.
4        On this issue, the parties dispute whether Yebra engaged in protected activity. In
5  its opening brief, Amfit argued that Yebra failed to show that Dan's harassment was
6  because of Yebra's sex, national origin, or skin color. Dkt. 18 at 19–20. In response,
7  Yebra submitted a declaration in which she claims that Dan's harassment toward her was
8  "more aggressive and hostile" than toward other male employees at Amfit. Yebra Dec. ¶
9  24. Even if this was true, this fact does not show that Yebra conveyed such information
10 to Amfit. In other words, Yebra has failed to show that she engaged in the protected
11 activity of reporting harassment based on the protected characteristic of sex. Therefore,
12 the Court grants Amfit's motion for summary judgment on Yebra's retaliation claim.

### IV. ORDER

14       Therefore, it is hereby **ORDERED** that Amfit's motion for summary judgment
15 (Dkt. 18) is **GRANTED in part** and **DENIED in part** as stated herein.
16       Dated this 21st day of August, 2015.

                                                  BENJAMIN H. SETTLE
                                                  United States District Judge